1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 **EASTERN DISTRICT OF CALIFORNIA**

10

| | | |
|---|---|---|
| 11 CHARLES HAYES, | ) | Case No.: 1:19-cv-01722-JLT |
| 12        Plaintiff, | )<br>) | ORDER DENYING MOTION TO AMEND |
| 13     v. | )<br>) | COMPLAINT |
| 14 KERN COUNTY, | )<br>) | (Doc. 18) |
| 15        Defendant. | )<br>) | |
| 16 | ) | |

17      Plaintiff seeks leave to file a first amended complaint. (Doc. 18.) Defendant opposes the

18 request. (Doc. 20.) On December 14, 2020, Plaintiff filed a reply. (Doc. 21.) For the following

19 reasons, Plaintiff's motion for leave to amend is **DENIED**.

20 **I.      Factual Allegations and Background**

21      Plaintiff alleges he was improperly held in custody based on erroneous identification after his

22 arrest in Las Vegas and transfer to Kern County. He claims Kern County Sheriff Department

23 employees failed to review the physical characteristics description attached to the outstanding warrant

24 upon which he was arrested and failed to use fingerprint databases to ascertain his identity. (Doc. 1 at

25 15) Instead, they mistook him for Devon Jace Robinson, a man for whom there was an active warrant

26 issued out of Kern County.

27      When the plaintiff filed the action, he named only the County of Kern and Does 1-10. (Doc. 1)

28 He named Does 1-10 "individually and as peace officers" and alleged they "were duly authorized

employees and agents of COUNTY." (Doc. 1 at 3) Now, the plaintiff seeks to amend the complaint to add Deputies Mario Rojas, Patrick Gilbert Klawitter and Christopher Banks, Sheriff Support Technicians Brandy Hirrel and Jocelyn Marie, and Connie Jefferies, and Rhonda Powell Boyles in place of Does 1-7. (Doc. 18 at 6) The plaintiff intends to allege that Rojas, Marie and Powell Boyles failed to "review any unique identifier data (such as fingerprints, height, and weight to ensure the identity of Plaintiff." (Doc. 18-1 at 37) He intends to allege that Klawitter and Banks transported the plaintiff to Kern County from Las Vegas and, before doing so, "failed to confirm warrant, verify extradition paperwork, name and description as required by Kern County Policy." Id.  He plans to assert that Klawitter, Banks and Hirrel "failed to check fingerprints, ask Plaintiff his name, and did not review any extradition materials that would have readily informed any person that Mr. Hayes was not Devon Jace Robinson." Doc. 18-1 at 38.

The Court scheduled this case on March 10, 2020 (Doc. 11), using the information provided by the parties (Doc. 8). Plaintiff's counsel did not appear at the hearing. (Doc. 10) At the hearing and in a written order, the Court ordered that any stipulations or motions to amend the pleadings must be filed by June 8, 2020[1] (Doc. 11 at 2). The Court ordered the parties to make their initial disclosures by March 24, 2020, to seek any amendments to the pleadings by June 8, 2020 and to complete all nonexpert discovery by November 20, 2020. Id.

On March 24, 2020, Kern County served its initial disclosures. (Doc. 18-1 at 2, Neal Decl., ¶ 2, Exhibit A.) The County identified four people who were likely to have discoverable information. (Doc. 20-1 at 2, 5.) This included two Las Vegas Metropolitan Police Department employees, D.Nesheiwat and Doris Hearrington, and Jocelyn Wolter and Deputy Mario Rojas. Id. The plaintiff failed to make his initial disclosure until June 5, 2020. (Doc. 20-1 at 2)

The plaintiff took no action to discover the case until August 7, 2020, when he propounded written discovery. (Neal Decl., ¶ 3.) He requested the identity of those who played a role in his booking and processing. Id.  The County served its response on September 28, 2020. (Neal Decl., ¶ 4.)

---

[1] The plaintiff proposed July 1, 2020 as the deadline and the defense proposed May 4, 2020.  (Doc. 8 at 3) Without the plaintiff's explanation at the hearing why the July date should be selected, the Court split the difference by choosing June 8, 2020.

The response demonstrated that those noted above played a role in transferring the plaintiff from Las Vegas and booking him into jail in Kern County. Two months later, the plaintiff filed the current motion to amend (Doc. 18).

## II.      Legal Standards

### A.      Scheduling Orders

Districts courts must enter scheduling orders in actions to "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3). In addition, scheduling orders may "modify the timing of disclosures" and "modify the extent of discovery." *Id.* Once entered by the court, a scheduling order "controls the course of the action unless the court modifies it." Fed. R. Civ. P. 16(d). Scheduling orders are intended to alleviate case management problems. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 610 (9th Cir. 1992). As such, a scheduling order is "the heart of case management." *Koplove v. Ford Motor Co.*, 795 F.2d 15, 18 (3rd Cir. 1986).

Further, scheduling orders are "not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Johnson*, 975 F.2d at 610 (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Maine 1985)). Good cause must be shown for modification of the scheduling order. Fed. R. Civ. P. 16(b)(4). The Ninth Circuit explained:

> Rule 16(b)'s "good cause" standard primarily considers the diligence of the party seeking the amendment. The district court may modify the pretrial schedule if it cannot reasonably be met despite the diligence of the party seeking the extension. Moreover, carelessness is not compatible with a finding of diligence and offers no reason for a grant of relief. Although existence of a degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion, the focus of the inquiry is upon the moving party's reasons for modification. If that party was not diligent, the inquiry should end.

*Johnson*, 975 F.2d at 609 (internal quotation marks and citations omitted). Therefore, parties must "diligently attempt to adhere to the schedule throughout the course of the litigation." *Jackson v. Laureate, Inc.*, 186 F.R.D. 605, 607 (E.D. Cal. 1999). The party requesting modification of a scheduling order has the burden to demonstrate:

> (1) that she was diligent in assisting the Court in creating a workable Rule 16 order; (2) that her noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding her diligent efforts to comply, because of the development of matters which could not

1      have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling
2      conference; and (3) that she was diligent in seeking amendment of the Rule 16 order,
     once it became apparent that she could not comply with the order.

3 *Id.* at 608 (internal citations omitted).

4 **B.**     **Pleading Amendments**

5       Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within

6 21 days of service, or if the pleading is one to which a response is required, 21 days after service of a

7 motion under Rule 12(b), (e), or (f). "In all other cases, a party may amend its pleading only with the

8 opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).

9       Granting or denying leave to amend a complaint is in the discretion of the Court, *Swanson v.*

10 *United States Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996), though leave should be "freely give[n]

11 when justice so requires." Fed. R. Civ. P. 15(a)(2). "In exercising this discretion, a court must be

12 guided by the underlying purpose of Rule 15 to facilitate decision on the merits, rather than on the

13 pleadings or technicalities." *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981). Consequently,

14 the policy to grant leave to amend is applied with extreme liberality. *Id.* After a defendant files an

15 answer, leave to amend should not be granted where "amendment would cause prejudice to the

16 opposing party, is sought in bad faith, is futile, or creates undue delay." *Madeja v. Olympic Packers*,

17 310 F.3d 628, 636 (9th Cir. 2002) (citing *Yakama Indian Nation v. Washington Dep't of Revenue*, 176

18 F.3d 1241, 1246 (9th Cir. 1999)).

19       When determining whether to grant leave to add new parties, the Court is required to consider

20 whether the new parties are properly joined. Parties *must* be joined if the court cannot provide

21 complete relief otherwise or adjudicating the issues without the new party could impair the new party's

22 interests or risks double, multiple or inconsistent obligations. Fed. R. Civ. P. 19.

23       Parties *may* be joined if the right to relief arises out of the same transaction, occurrence or

24 series of transactions or occurrences and there is a common question of law or fact that will be

25 determined in the action. Fed. R. Civ. P. 20. If new parties are added, the Court may order separate

26 trials as necessary "to protect a party against embarrassment, delay, expense, or other prejudice that

27 arises." Fed. R. Civ. P. 20(b).

28 *///*

III.     **Analysis**

    A.     **Rule 16**

        Plaintiff contends that under Rule 16, good cause exists to amend the scheduling order. (Doc. 18 at 8-10.) He asserts that he sought discovery after the County failed to produce documents along with its Rule 26 disclosure.[2] He claims that the COVID-19 pandemic and familial emergencies explain the delays in discovery.  The Court disagrees.

        First, the plaintiff has not demonstrated that his noncompliance with the Rule 16 deadline to seek amendment to the complaint occurred notwithstanding his diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference.

        Though the Court agrees that the COVID-19 pandemic was certainly not anticipated when the Court scheduled the case, everyone has been required to adapt to the COVID-19 pandemic and to do so abruptly.  The Court does not minimize the burdens that this has imposed, but it has been offered no evidence that it presented any greater burden to plaintiff's counsel than it did to anyone else. Indeed, counsel's lack of attention to this case began before the pandemic struck in earnest.  For example, plaintiff's counsel failed to appear at the scheduling conference or to note any need for an expanded schedule in the joint scheduling report.  Likewise, the plaintiff failed to make his Rule 26 disclosures until June 5, 2020 (Doc. 20-1). He does not discuss this failure and the Court cannot conclude that the COVID-19 pandemic was the cause. The disclosures were due on March 24, 2020, just three court days after the state's stay-at-home order issued on March 19, 2020.[3] Clearly, had the plaintiff intended to make a timely disclosure, he would have completed, or at least had a substantial draft completed, before the close of the day on March 19, 2020, when the pandemic orders issued.

        Second, when he filed the moving papers, plaintiff's counsel offered few details about how the pandemic or his family emergencies caused the delays in discovering the case.  Thus, there is insufficient evidence to support the Rule 16 factors and the motion is DENIED on that basis. Only

---

[2] Plaintiff implies that the defense had an obligation to list all of those known to be involved and to provide documents along with the disclosure. Rule 26 does not require either. Fed.R.Civ.P. 26(a)(1)(A)(i), (ii).

[3] The Court takes judicial notice of Governor Newson's Executive Order N-33-20 and Los Angeles Mayor Garcetti's "Safer at Home" order, both of which were issued on March 19, 2020.

when the defense challenged the showing of good cause did Mr. Neal file an expanded declaration along with the reply[4]. In the new declaration, he reports that his father fell ill in May 2019 and his condition worsened over time.  By the time of the scheduling conference in March 2020, Mr. Neal was away from the office one or two days a week to assist his father, and his father's condition was grave. (Doc. 21-1 at 2) Despite this, Mr. Neal did not bring this to the Court's attention, include this information in the scheduling report, or seek any additional time for discovery despite that his father's health had been in steady decline for nine months, that Mr. Neal  was planning to donate bone marrow to his father and that the procedure was imminent, and that his father's condition was causing him to be away from the office more and more.  The Court must presume, therefore, that despite all of this, Mr. Neal felt the time he sought for discovery was sufficient.

Around the time the pandemic struck, Mr. Neal's father further declined and was hospitalized. (Doc. 21-1 at 3) For a five-week period sometime in March and/or April[5], Mr. Neal became his father's remote caregiver until he was again hospitalized. Id. Despite this, on June 5, 2020, Mr. Neal served the plaintiff's initial disclosure, albeit more than two months late. (Doc. 20-1 at 2) On July 10, 2020, Mr. Neal's father died. Id. Mr. Neal stopped working "for at least a month" after his father's death. Id.  Soon after he returned to work, Mr. Neal's uncle died. Id. In June 2020, the niece of Mr. Carr, co-counsel in this case, suffered an adverse reaction to a treatment and died ten days later. (Doc. 21-1 at 3) During the same period, Mr. Carr's uncle died. Id.

Though the Court cannot express how sorry it is for these difficulties, it also cannot overlook that counsel failed to bring any of this to the Court's attention—or to opposing counsel's attention— and, apparently, simply abandoned the case during this tragic interval.  Though Mr. Neal implies that his emotional upset caused him to leave work for more than a month, there is no a showing that Mr. Carr, despite his losses, was incapacitated during any of the relevant period or any indication that he was absent from work. Knowing that Mr. Neal took an extended leave when his father died, there is no

---

[4] The plaintiff offers no explanation why he believes that he can offer additional evidence with the reply.  Clearly, this is not permitted and, though the Court considers this new evidence, it does so only to demonstrate that even had the evidence been submitted with the motion, it is insufficient to support the Rule 16 factors.
[5] The declaration is vague as to time. Doc. 21-1 at 2-3.

explanation why attorneys Neal and/or Carr did not seek out an association with outside counsel or to withdraw from the case, given the fact that they were not handling it.[6]

Third, as noted above, though counsel participated in the joint scheduling conference report, he failed to include details related to Mr. Neal's minimized time at work caused by his father's illness. He did not seek an expanded schedule that would allow for the imminent bone marrow transplant that Mr. Neal was planning to undergo for his father's benefit, and it did not plan for the aftercare that Mr. Neal would have to provide after the transplant procedure. Thus, he was not diligent in assisting the Court in creating a workable Rule 16 order.

Fourth, when it was obvious that the plaintiff could not meet the deadline to amend the case schedule, Mr. Neal failed to seek amendment of the deadline at that time. Despite working on this case in June—to the extent that he served the initial disclosures on June 5, 2020—Mr. Neal failed to bring his difficulties to the Court or opposing counsel even though the pleading amendment deadline would pass just three days later. By waiting until November to bring these issues to the Court, it is apparent that he was not diligent in seeking amendment of the Rule 16 order, once he knew he could not comply with the order.

Fifth, despite learning in late March of two of those involved in the acts that gave rise to the plaintiff's damages and identifying in September the remaining actors, Mr. Neal waited until late November to file the motion to amend. *Schwerdt v. Int'l Fidelity Ins. Co.*, 28 F.App'x 715, 719 (9th Cir. 2002) (delay of one month after learning of facts from a witness' deposition did not constitute diligence under Rule 16 in seeking leave to amend); *Sako v. Wells Fargo Bank, Nat. Assoc.*, 2015 WL 5022326, at *2 (S.D. Cal. 2015) ("Courts have held that waiting two months after discovering new facts to bring a motion to amend does not constitute diligence under Rule 16"); *Experexchange, Inc. v. Doculex, Inc.*, 2009 WL 3837275, at *29 (N.D. Cal. Nov. 16, 2009) (delay of two months after

---

[6] Sadly, there are few attorneys or judges—at least those who have been practicing for any significant amount of time—who have not suffered life-changing events, like illnesses, substance abuse, divorce, marriages, births, and deaths. Even while under the stress of terrible trauma, attorneys must assure their client's interests are protected either by pressing forward despite emotional turmoil or turning the case over to others who will cover them in the short or long term. What they cannot do is ignore the case until they feel ready to return to the practice of law. *Finch v. State Bar*, 28 Cal.3d 659, 665 (1981) ["Even the willful failure to perform legal services for which an attorney has been retained in itself warrants disciplinary action, constituting a breach of the good faith and fiduciary duty owed by the attorney to his clients."]

1    discovering new facts did not meet the good cause standard under Rule 16). This delay is most striking

2    because the plaintiff knew no later than the time of the preparation of the joint scheduling report, that

3    he needed to amend his complaint to name more actors. (Doc. 8 at 3) Because the plaintiff has failed

4    to show that he acted with diligence to seek the amendment and to discover this case, the plaintiff has

5    failed to demonstrate the Rule 16 factors are met.

6         **B.      Rule 15**

7         Even had the plaintiff met the Rule 16 factors, the Court does not find that the proposed

8    amended pleading should be allowed under Rule 15.

9         First, the Court agrees that obtaining the schedule amendment days before filing the motion to

10   amend appears to be an attempt to head-off any argument that the proposed pleading amendment

11   would cause a delay in the case schedule. Otherwise, it makes no sense that he would ask defense

12   counsel to stipulate to extend other deadlines but not ask about the pleading amendment deadline,

13   which is the key deadline for this motion. Though the Court does not condone counsel's failure to

14   inform the defense of his plan to seek the pleading amendment when he sought the extension of the

15   other deadlines, the Court does not find that this conduct constitutes bad faith in seeking to file an

16   amended complaint.

17        Second, the complaint is explicit that the Doe defendants are peace officers. Though the

18   proposed pleading amendment alleges that each of the new defendants are peace officers, there is no

19   evidence to support this except as to Rojas, Klawitter and Banks. Each of these proposed defendants

20   are described as "deputies."  Hirrel and Marie, however, as described as "Sheriff Support

21   Technicians," and there is no indication of the job positions of Jefferies, and Powell Boyles, though it

22   appears they may be detention staff, based upon their alleged acts. California defines a "peace officer"

23   to include any deputy sheriff "employed in that capacity," and any deputy sheriff whose duties are

24   devoted entirely or in part to "custodial assignments."  Cal.Pen.Code § 830.1(a), (c).  It does not

25   include Support Technicians or detention staff that are not otherwise deputies, as peace officers. Thus,

26   under California law, mere employment by the Sheriff's Office does not mean that every employee

27   who works there is a peace officer. The plaintiff makes no attempt to demonstrate that any of the

28   proposed new defendants are properly described by the "Doe definition" included in the complaint.

(Doc. 1 at 3).

Third, amendment of the complaint would cause undue delay. Though the plaintiff claims that the amendment would not prevent *him* from completing discovery within the current deadline, he ignores that it *would* cause delay because some of the proposed new defendants are no longer employed by the County of Kern (Doc. 20 at 5) and they must be located and all of the new defendants would need to served, to respond to the complaint and to complete discovery[7]. There is literally no way that this can all occur within 90 days.

Given these considerations, the Court finds that the plaintiff has failed to demonstrate that the amendment should be permitted under Rule 15.

### IV.     Conclusion and Order

The Court finds Plaintiff has not been diligent in seeking leave to amend and has not met the good cause requirement of Rule 16. As a result, the inquiry ends, and the Court does not consider whether leave to amend is appropriate under Rule 15. *See Johnson*, 975 F.2d at 609; *see also Zivkovic v. Southern California Edison, Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) ("If the party seeking the modification was not diligent, the inquiry should end and the motion to modify should not be granted") (internal quotation marks omitted). Accordingly, the Court **ORDERS** that Plaintiff's motion to amend (Doc. 18) is **DENIED**.


IT IS SO ORDERED.

Dated:   **December 19, 2020**              **/s/ Jennifer L. Thurston**
                                                                            UNITED STATES MAGISTRATE JUDGE

---

[7] The fact that the plaintiff does not think that the new defendants need to conduct discovery is not the test. Each party is permitted to decide for himself the extent to which discovery is needed; clearly, the opponent does not get to decide this.

9