1
2
3
4
5
6
7
8                    IN THE UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10

11  CHARLES HAYES,                        │  CASE NO.  1:19-CV-01722-CDB

12                      Plaintiff,        │  ORDER GRANTING DEFENDANTS' MOTION
                                          │  FOR SUMMARY JUDGMENT
13            v.                          │
                                          │  (Doc. 62)
14  KERN COUNTY, et al.,                  │

15                      Defendants.       │

16

17          Pending before the Court is the motion for summary judgment by Defendants Christopher Banks

18  ("Banks"), Rhonda Powell Boyles ("Boyles"), Brandy Hirrel ("Hirrel"), Connie Jefferies ("Jefferies"),

19  Kern County, Jocelyn Wolter ("Wolter") [1], and Mario Rojas ("Rojas") (hereinafter collectively

20  "Defendants"), the opposition of Plaintiff Charles Hayes ("Plaintiff"), and Defendants' reply.[2]  (Docs.

21  62, 65, 76).

22          For the reasons set forth herein, Defendants' motion for summary judgment shall be GRANTED.

23

24

25          [1] Throughout the parties' pleadings, Defendant Jocelyn Wolter is referred to as (1) Jocelyn
26  Wolter, (2) Jocelyn Wolters, and (3) Jocelyn Marie.  For the Court's purposes, Defendant shall be
    referred to as "Wolter."

27          [2] On March 6, 2020, the parties consented to the jurisdiction of the United States Magistrate
    Judge and the action has been reassigned to Magistrate Judge Christopher D. Baker for all purposes
28  pursuant to 28 U.S.C. § 636(c)(1).  (Docs. 9, 56).

**Factual Background**[3]

On November 3, 2018, Las Vegas Metro Police Department ("LVMPD") arrested a black male for resisting arrest. (Doc. 62-1, Defendants' Separate Statement of Material Fact "DSMF" at ¶ 1); (Doc. 65-2, Plaintiff's Separate Statement of Material Fact "PSMF" at ¶ 1[4]). The man arrested by LVMPD was Plaintiff. (DSMF at ¶¶ 1-2, PSMF at ¶ 1). LVMPD officers found Devon-Jace Robinson's ("Robinson") California identification card on Plaintiff's person. (DSMF at ¶ 2, PSMF at ¶ 2). Robinson's California identification card was the only form of identification found on Plaintiff's person at the time of his arrest. (DSMF at ¶ 3). The identification card listed Robinson's height at 5' 11" and weight at 181 pounds. (DSMF at ¶¶ 14-15, PSMF at ¶¶ 6, 8). During deposition, Plaintiff attested he never identified himself as Robinson to the arresting officers and that he found Robinson's identification card on the ground. (PSMF at ¶¶ 3-5).

Plaintiff was transported to the Clark County Detention Center ("CCDC") on charges of obstructing a police officer and resisting a public officer with a deadly weapon. (DSMF at ¶ 4). Upon arrival, Plaintiff was booked (i.e., photographed, screened, and fingerprinted) for resisting arrest and later re-booked on a California fugitive warrant as Robinson. (PSMF at ¶ 11). LVMPD officers conducted a warrant search for the name of Robinson. (DSMF at ¶ 4). An outstanding fugitive warrant from Kern County returned for Robinson. *Id.* Robinson had a warrant for his arrest in Kern County after Deputy Rojas with the Kern County Sheriff's Office ("KCSO") investigated a rape and kidnapping. (DSMF at ¶ 5, PSMF at ¶ 36). As part of his investigation, Rojas received a photo of Robinson's identification card from the victim. (DSMF at ¶ 5). After obtaining the warrant, Rojas did nothing to locate Robinson. (PSMF at ¶ 37).

KCSO requested, via fax, that CCDC hold the detainee identified as Robinson and notify their office when he was ready for extradition. (DSMF at ¶ 11, PSMF at ¶ 12). The fax included preliminary

---

[3] As it must on a motion for summary judgment, the Court sets forth the material facts and draws all reasonable inferences in the light most favorable to Plaintiff, the non-moving party. *See Scott v. Harris*, 550 U.S. 372, 387 (2007).

[4] Although the PSMF refers to and relies on exhibits purportedly attached to the Declaration of Na'Shaun L. Neal, as set forth in Plaintiff's notice of errata (Doc. 69), the declaration with attached exhibits filed in support of Plaintiff's opposition to Defendants' motion for summary judgment is that of Lauren K. McRae. *See* (Doc. 66).

proof of the outstanding warrant issued by the Kern County Superior Court on June 23, 2018, for Robinson. (DSMF at ¶ 12). The warrant listed the wanted subject's driver's license number and physical characteristics: Black male, height of 5'11, weight of 185 pounds, black hair color, brown eye color, and home address of Kentucky Street, Bakersfield. (DSMF at ¶ 14); (Doc. 68-25). The warrant referenced the same driver's license number as the identification card recovered during Plaintiff's arrest. (DSMF at ¶ 13). Robinson's identification card also depicted a man with shoulder-length hair. (DSMF at ¶ 17); (Doc.62-3 at ¶¶ 34-35). Plaintiff's booking photo taken by the CCDC shows a man with hair just past his shoulders. (DSMF at ¶ 17); (Doc.62-3 at 26-27). Plaintiff's identification card, which was not on his person at the time of arrest, states that his height is 5' 6" and his weight is 160 pounds. (DSMF at ¶¶ 17, 60); (Doc. 62-3 at 36-37); *see* (Doc. 65-1 at ¶ 3) ("Robinson is also substantially heavier at 181 pounds in comparison to Mr. Hayes' weight of 160 pounds.").[5] Plaintiff's identification card was issued on January 16, 2019. (Doc. 62-3 at 36-37).

CCDC conducted a medical screen of Plaintiff. (DSMF at ¶ 8). During the screen, Plaintiff stated he was not the name on the identification card. *Id*. The medical screening nurse relayed Plaintiff's statement to a corrections officer alongside a notation that the identification card has "the same picture" as Plaintiff. *Id*. at ¶ 9. Thereafter, CCDC staff assigned Plaintiff (identified as Robinson), ID # 7065910, and placed him in a cell. (PSMF at ¶ 13). While in a cell, Plaintiff informed a CCDC officer that he was Charles Hayes and not Robinson. *Id*. at ¶ 14. Later that day Plaintiff's fingerprints were scanned and searched using Automated Fingerprint Identification System ("AFIS"), which checked to see if he had been in CCDC custody before. (DSMF at ¶ 10, PSMF at ¶ 14). A prior ID # 7522335 associated with "Charles Rico Hayes" was displayed in response to the AFIS search. (PSMF at ¶ 14).

On November 4, 2018, a Clark County, Nevada Justice Court found probable cause for Plaintiff's arrest and pretrial detention relating to his conduct in resisting arrest. (DSMF at ¶ 19). On November 5, 2018, the Nevada Justice Court held another hearing, at which the court called the case and

---

[5] Plaintiff asserts at the time of the incident, he only weighed 140 pounds. (PSMF at ¶ 9). However, Plaintiff's cited evidence, his deposition taken on November 19, 2020, does not support this statement. (Doc. 66-1). In the deposition, Plaintiff was asked "[a]nd how much do you weigh?" and Plaintiff responded, "[a]bout 140, 150, somewhere around there." *Id*. at 14. Next, Plaintiff was asked "[h]as—your weight changed at all in the last year and a half?" and Plaintiff answered, "[i]t went up a little bit." *Id*.

referred to Plaintiff as "Devon Robinson." *Id*. at ¶ 20.  Plaintiff did not object or correct the court, and
his attorney did not mention anything to the court about mistaken identity.  *Id*.  The court advised
Plaintiff of the pending charges for two felony counts of resisting a public officer with a deadly weapon
and one misdemeanor charge of obstructing or false statements to a public officer.  *Id*.  The court
affirmed Plaintiff's pretrial detention and set a $3,000 bail amount.  *Id*.

That same day, AFIS employee Michelle Bass determined that the fingerprints of ID # 7065910
and ID # 7522335 originated from the same subject, "Charles Rico Hayes," who had previously been
arrested in Las Vegas in 2018.  (DSMF at ¶ 21, PSMF at ¶ 15).  Michelle Bass then completed a
confirmation of identification page and notified CCDC that Plaintiff was Charles Rico Hayes.  (PSMF at
¶ 16).  Subsequently, Jennifer Wood ("Wood"), a CCDC Detention Service Supervisor, completed a
"Corrected Booking Voucher" to change the "true name" to Charles Hayes with an alias of Devon
Robinson and merged the records for Robinson and Charles Hayes.  (DSMF at ¶ 22, PSMF at ¶ 17).

On November 6, 2018, Plaintiff attended an extradition hearing at Clark County Courthouse on
the outstanding warrant for Robinson.  (DSMF at ¶ 24, PSMF at ¶ 20).  The court called the case and
referred to Plaintiff as "Devon Robinson."  (DSMF at ¶ 24).  Defendants state Plaintiff did not object to
being identified as Robinson.  *Id*.  Plaintiff claims he told the court that he was misidentified.  (PSMF at
¶ 29).  At the hearing, the Judge asked Plaintiff if he wanted to go back to California or fight extradition.
(DSMF at ¶ 24, PSMF at ¶¶ 21, 23).  Plaintiff responded he wanted to go to California.  (DSMF at ¶ 24,
PSMF at ¶ 21).  Plaintiff then signed the written extradition waiver which indicated the undersigned was
"Robinson, Devon".  (DSMF at ¶ 25).  However, Plaintiff signed his name as "Charles Hayes."  (PSMF
at ¶ 30).

After the extradition hearing, CCDC employee Doris Hearrington ("Hearrington") contacted
Kern County Arrest Records department by email regarding the Robinson fugitive warrant.  (DSMF at ¶
26, PSMF at ¶ 32).  The subject line of the email was "Robinson, Devon, AKA: Hayes, Charles" and it
included a booking photo and a request that KCSO compare it to any picture on file for their wanted
suspect.  (DSMF at ¶ 27, PSMF at ¶ 32); (Doc. 67-4).  Jeffries and Wolter worked for Kern County
Arrest Records.  (PSMF at ¶ 33).  Defendants Jefferies responded to Hearrington stating, "[o]ur agency
has no booking photos/arrest records on file.  I have forward you (*sic*) email/photos to Deputy Rojas for

further review." (DSMF at ¶ 28). That same day, Rojas emailed Kern County Arrest Records stating "AFFIRMATIVE! That's the suspect." *Id.* at ¶ 32. On November 8, 2018, Hearrington followed up on her email noting she had not heard anything back from Rojas regarding the picture comparison/ID check for the suspect. *Id.* at ¶ 29. Wolter again forwarded Hearrington's email to Rojas and attached the booking photo of Plaintiff. *Id.* at ¶ 31. Neither Wolter nor Jefferies made any determination as to the identity of Plaintiff. *Id.* at ¶ 36.

On December 14, 2018, Plaintiff entered a no-contest plea to resisting arrest related to the November 3 incident in Las Vegas. *Id.* at ¶ 37. The court accepted his plea and sentenced him to 60 days in Clark County jail to run concurrently with 42 days credit. *Id.* Plaintiff's sentence was to end on January 1, 2019. *Id.* Plaintiff was granted "time served" for his 60-day jail sentence on December 21, 2018. (PSMF at ¶ 46).

On December 26, 2018, Plaintiff inquired about his continued confinement and was informed he was not being released because of a 30-day hold related to Kern County's fugitive warrant. *Id.* at ¶¶ 47-48. Plaintiff notified Clark County Detention Center personnel that he was not Robinson. *Id.* at ¶ 49. That same day, Hearrington faxed the written waiver of extradition to Kern County. (DSMF at ¶ 38). KSCO Deputy Boyles notified CDCC that Plaintiff would be picked up the next day. *Id.*

On December 27, 2018, Plaintiff was picked up by KCSO Deputies Banks and Patrick Klawitter ("Klawitter") for extradition to California. (DSMF at ¶ 40, PSMF at ¶ 53). KCSO considers Banks and Klawitter "arresting officers" in these circumstances. (PSMF at ¶ 53). Banks and Klawitter had a copy of Robinson's warrant when they picked up Plaintiff from Las Vegas. (DSMF at ¶ 41, PSMF at ¶ 54). Upon his arrival in Bakersfield, Plaintiff attests he complained to unidentified police officers, "you all got the wrong person." (PSMF at ¶ 55).[6] Plaintiff also attests that Banks and Klawitter told him during the drive, "you'll figure that out when you get to booking." *Id.* at ¶ 56. Nobody at CCDC told Banks that the man he was picking up (Plaintiff) went by a different name. (DSMF at ¶ 46). The arresting officers could have called KCSO's extradition team if there was a misidentification issue. (PSMF at ¶ 64).

---

[6] Plaintiff's assertion that he "complained to Defendant Deputies Banks and Klawitter" is not supported by the cited deposition transcript excerpts. (PSMF at ¶ 55).

Banks presented Plaintiff as the arresting officer to Hirrel, the booking clerk of Kern County jail, for booking.  (DSMF at ¶ 48, PSMF at ¶ 73).  Hirrel was not a sworn peace officer at the time of the incident, and her involvement with Plaintiff was accepting him from the arresting officer Banks.  (DSMF at ¶ 49, PSMF at ¶ 73).  Kern County has a policy, C-100, in effect at the time of this incident, titled "Receiving Inmates-Arresting and Receiving Officer Duties."  (DSMF at ¶ 51).  Plaintiff does not identify any aspect of the Policy violated by Banks or Hirrel during Plaintiff's intake.  *See* Plaintiff's Opposition to DSMF ("Pl. Opp. DSMF) at ¶ 51 (Doc. 65-1).  It is the duty of the receiving officer to fingerprint and photograph the arrested individual.  (PSMF at ¶ 65).  Once the fingerprints and photograph are taken by Kern County jail staff that record will be electronically sent over to the identification records unit at headquarters.  *Id*.; (Doc. 67-13 at 6).

A DEO booking clerk will ask the arrested individual what their name is at the time they're being booked.  (Doc. 67-13 at 11).  If an arrestee informs the booking clerk that his true name is not what was presented to them "[t]hey can either call a supervisor, or in most cases they will be booked on the information that is being presented to them by the arresting or transporting officer for booking purposes.  And if there's a question on identity, usually that process gets determined through the identification after the fingerprint has been taken from that individual."  *Id*. at 12.  During Plaintiff's booking by KCSO, no one measured his height and weight.  (PSMF at ¶ 70).  Policy C-100 does not require Kern County jail staff to measure an inmate's height or weigh an inmate.  (DSMF at ¶ 56).  Plaintiff's booking records from Kern County jail include a recorded height of 5'11, weight of 185 pounds, like the warrant.  (Doc. 68-3).  Since Plaintiff had previously been in custody in California, he had already been assigned unique identifiers in the California Law Enforcement Telecommunication System ("CLETS"), which were linked to his true name and fingerprints.  (PSMF at ¶ 85).

Plaintiff was booked under the name Devon Jace Yusef Robinson, with an alias of Charles Rico Hayes.  (DSMF at ¶ 50).  Plaintiff was fingerprinted by KCSO during the booking process.  (DSMF at ¶ 54; Pl. Opp. DSMF ¶ 54); *see* (Docs. 66-1 at 68:2-17; 68-18 at Resp. No. 16).  Plaintiff attests he complained about his misidentification as he was being booked into Kern County Jail.  (PSMF at ¶ 74).  Plaintiff further attests officers laughed and joked that all Black people look alike, while one of them held a photo of Robinson towards his head.  *Id*.  Kern County's review of the CJIS (Criminal Justice

1   Information System) for Plaintiff's incarceration at the Kern County jail does not notate whether

2   Plaintiff ever indicated he was not Devon Jace Robinson and ascribed to Plaintiff "Robinson, Devon

3   Jace Yusef" and "Hayes, Charles Rico." (DSMF at ¶ 59; Pl. Opp. DSMF ¶ 59; D. Reply Pl. Opp. DSMF

4   ¶ 59).  Thereafter, Plaintiff was placed in protective custody.  (PSMF at ¶ 76).

5            Plaintiff's mother, Vonita Roberson ("Roberson"), complained to KCSO Internal Affairs that her

6   son was falsely imprisoned in Kern County Jail due to a misidentification.  *Id*. at ¶ 78.  Roberson asserts

7   "[p]rior to November 2018, Charles was arrested in California."  (Doc. 71 at 3).  Roberson provided

8   Internal Affairs with a copy of Plaintiff's birth certificate and ID.  (PSMF at ¶ 78).

9            On January 2, 2019, Plaintiff attended a felony arraignment in Bakersfield, based on the

10  outstanding warrant for Robinson.  (DSMF at ¶ 52).  Plaintiff was provided with an attorney.  (DSMF at

11  ¶ 52, PSMF at ¶¶ 80, 82).  Roberson attended Plaintiff's court hearing and informed the courthouse

12  deputies and Plaintiff's public defender of the misidentification.  (PSMF at ¶ 80).  Roberson provided

13  Plaintiff's birth certificate and ID to the public defender.  *Id*.

14           On January 14, 2019, between 8 am and 11:30 am, Rojas received a call from a Kern County

15  District Attorney ("DA") assigned to Plaintiff's criminal case, that Plaintiff's public defender told the

16  DA that Plaintiff claimed he was not Robinson.  (DSMF at ¶ 53, PSMF at ¶ 82).  The DA requested that

17  Rojas ask the victim of Robinson's case to identify the suspect who was in court as her attacker.  (DSMF

18  at ¶ 53).  On January 15, 2019, a preliminary hearing was held to verify whether the subject in custody

19  was Robinson.  (DSMF at ¶ 54, PSMF at ¶ 83).  The victim in the Robinson matter attended the hearing

20  and stated Plaintiff was not Robinson.  *Id*.  Rojas obtained Robinson's thumbprint from the California

21  DMV.  (DSMF at ¶ 54, PSMF at ¶ 84).  KCSO technicians compared the DMV prints for Robinson with

22  the booking fingerprints of Plaintiff which confirmed that Plaintiff was not the same person sought by

23  the outstanding warrant.  (DSMF at ¶ 54).  Thereafter, Plaintiff was released from Kern County Jail.

24  (PSMF at ¶ 86).  On July 13, 2019, Robinson was arrested by KCSO.  (Doc. 76-1 at 8-9).

25  **Procedural Background**

26           On December 6, 2019, Plaintiff filed a complaint in this Court naming Kern County and DOES

27  1-10 as Defendants.  (*Hayes I*) (Doc. 1 at 2-3).  Plaintiff asserted against Defendants claims for: (1) false

28  imprisonment and false arrest, (2) *Monell* liability, (3) negligence, and (4) intentional infliction of

emotional distress.  *Id.*  On November 5, 2020, Plaintiff filed a complaint in the District of Nevada against LVMPD, Hearrington, Wood, and Joseph Lombardo, an officer of LVMPD.[7]  (*Hayes v. LVMPD*) (*Hayes v. LVMPD, et al.*, 2:20-cv-02048-KJD-BNW, Doc. 1).

On November 23, 2020, Plaintiff filed a motion for leave to file an amended complaint to replace Doe Defendants with seven KCSO employees.  (Doc. 18).  On December 7, 2020, Defendant filed an opposition to the motion to amend and Plaintiff filed a reply on December 14, 2020.  (Docs. 20-21).  On December 21, 2020, the Court denied Plaintiff's motion to amend as the deadline to amend had passed and Plaintiff failed to meet the good cause requirement of Rule 16.

On December 28, 2020, Plaintiff filed a separate action naming the seven KCSO employees as defendants advancing a single cause of action for false arrest and false imprisonment.  (*Hayes II*) (*Hayes v. Rojas, et al.*, No. 1:20-cv-01820-BAM, Doc. 1).  On February 5, 2021, the assigned magistrate judge issued findings and recommendations to dismiss the action for claim splitting.  (*Hayes II*, Doc. 10).  The Honorable District Judge Dale A. Drozd issued an order declining to adopt the findings and recommendations.  (*Hayes II*, Doc. 31).  On May 4, 2022, the assigned magistrate judge in *Hayes II* issued an order consolidating the case with *Hayes I*.  (*Hayes II*, Docs. 51-52).

On May 27, 2023, Defendants filed the instant motion for summary judgment.  (Doc. 62).  On June 20, 2023, Plaintiff filed an opposition, and the moving Defendants filed a reply on July 5, 2023. (Docs. 65, 76).

On August 16, 2023, the defendants in the *Hayes v. LVMPD* litigation filed separate motions for motions for summary judgment.  (*Hayes v. LVMPD*, Docs. 41-43).  On February 23, 2023, the Honorable District Judge Kent J. Dawson granted the defendants motions for summary judgment. (*Hayes v. LVMPD*, Docs. 58-60).  The Nevada District Court found Plaintiff's constitutional rights were not violated by LVMPD employees Hearrington or Wood and that neither was negligent or liable for intentional infliction of emotional distress.  (*Hayes v. LVMPD*, Docs. 41-42).  The Nevada District Court also held LVMPD could not be liable under § 1983 through a respondent superior theory of liability and

---

[7] On August 15, 2022, the parties filed a stipulation to dismiss with prejudice Joseph Lombardo from the *Hayes v. LVMPD* action.  (*Hayes v. LVMPD*, Doc. 40).  The Honorable District Judge Kent J. Dawson granted the parties' request and dismissed Joseph Lombardo from the case on August 18, 2022. (*Hayes v. LVMPD*, Doc. 44).

1   found there was no basis for *Monell* liability because Plaintiff's constitutional rights had not been

2   violated.  (*Hayes v. LVMPD*, Doc 60).  Thereafter, Plaintiff appealed the Nevada District Court's orders

3   to the Ninth Circuit Court of Appeals.  (*Hayes v. LVMPD*, Doc 64).[8]

4   **Legal Standard**

5         To prevail on a motion for summary judgment, the movant has the burden of demonstrating that

6   there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of

7   law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Washington Mutual Inc.*

8   *v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  A genuine issue of material fact exists if the

9   record contains some probative evidence that a reasonable fact finder would return a verdict for the non-

10  moving party.  *Anderson Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Wool v. Tandem Computers,*

11  *Inc.*, 818 F.2d 1422, 1436 (9th Cir. 1987).  In ruling on a motion for summary judgment, the court must

12  view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott*,

13  550 U.S. at 378.

14        Once the moving party satisfies its burden, the burden shifts to the non-moving party to show

15  that there are genuine factual issues that properly can be resolved only by a finder of fact.  *Cal.*

16  *Architectural Bldg. Prods. Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1446, 1468 (9th Cir. 1987)

17  (citing *Anderson*, 477 U.S. at 250).  The non-moving party cannot "rest upon the mere allegations or

18  denials of [its] pleading but must instead produce evidence that sets forth specific facts showing that

19  there is a genuine issue for trial."  *Estate of Tucker v. Interscope Records*, 515 F.3d 1019, 1030 (9th Cir.

20  2008) (internal citations omitted); Fed. R. Civ. P. 56(c)(1); *Matsushita Elec. Indus. Co. v. Zenith Radio*

21  *Corp.*, 475 U.S. 574, 586 n. 11 (1986).  The non-moving party must "show more than the mere existence

22  of a scintilla of evidence."  *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing

23  *Anderson*, 477 U.S. at 252); *Addisu v. Fed Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).  However,

24  the non-moving party is not required to establish a material issue of fact conclusively in its favor; it is

25  sufficient that "the claimed factual dispute to be shown to require a jury or judge to resolve the parties'

26

27

28       [8] The *Hayes* appeal is pending oral argument before the Ninth Circuit Court of Appeals on January 12, 2024.  *See Hayes v. LVMPD*, No. 23-15403 (Doc. 29).

1    differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809
2    F.2d 626, 630 (9th Cir. 1987).

3    **<u>Discussion</u>**

4           Defendants contend they are entitled to judgment as a matter of law on Plaintiff's federal claims
5    because there is no genuine dispute of material fact that Defendants did not violate Plaintiff's federal
6    constitutional rights.  (Doc. 62 at 12-20).  Defendants assert since there is no underlying constitutional
7    violation by any Kern County employee, Plaintiff's *Monell* claim fails.  *Id.* at 20-22.  Defendants also
8    argue the Court should decline to exercise supplemental jurisdiction of Plaintiff's state law claims.  *Id.* at
9    22.  The Court agrees with Defendants' contentions and concludes that applicable binding precedent
10   forecloses Plaintiff's claims.

11   <u>A. Federal Causes of Action, 42 U.S.C. § 1983</u>

12          To prevail under 42 U.S.C. § 1983, a plaintiff must prove (1) that he or she was "deprived of a
13   right secured by the Constitution or laws of the United States," and (2) "that the alleged deprivation was
14   committed under color of state law."  *Marsh v. Cnty. of San Diego*, 680 F.3d 1148, 1152 (9th Cir. 2012)
15   (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).  Here, Plaintiff asserts § 1983
16   causes of action for false arrest and false imprisonment.  (Doc. 1 at 5-6).  He also asserts a cause of
17   action for municipal liability pursuant to *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).  *Id.* at 6-9.
18   It is undisputed that the conduct at issues arises under color of state law.  Thus, the key issue is whether
19   Defendants deprived Plaintiff of constitutional rights.

20   <u>1. False Arrest—Fourth Amendment</u>

21          The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses,
22   papers, and effects, against unreasonable searches and seizures[.]"  U.S. Const. Amend. IV.  "An arrest
23   without probable cause violates the Fourth Amendment and gives rise to a claim for damages under §
24   1983."  *Harper v. City of LA.*, 533 F.3d 1010, 1022 (9th Cir. 2008); *Yousefian v. City of Glendale*, 779
25   F.3d 1010, 1014 n.1. (9th Cir. 2015) (absence of probable cause is an essential element of § 1983 false
26   arrest claim).  An arrest pursuant to a valid warrant is ordinarily consistent with the Fourth Amendment.
27   *Baker v. McCollan*, 443 U.S. 137, 143 (1979).

28

"[W]hen the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest." *Hill v. California*, 401 U.S. 797, 802 (1971). Probable cause is measured by an objective standard based on the information known to the arresting officer. *United States v. Lopez*, 482 F.3d 1067, 1072 (9th Cir. 2007) (citing *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). If the wrong person is arrested under a facially valid warrant, "the question is whether the arresting officers had a good faith, reasonable belief that the arrestee was the subject of the warrant." *Rivera v. Cnty. of Los Angeles*, 745 F.3d 384, 389 (9th Cir. 2014); *see Hill v. Scott*, 349 F.3d 1068, 1072 (8th Cir. 2003) ("[S]ufficent probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment…"). To determine whether an officer had probable cause for an arrest, courts "examine the events leading up to the arrest, and then decide whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause." *O'Doan v. Sanford*, 991 F.3d 1027, 1039 (9th Cir. 2021) (quoting *D.C. v. Wesby*, 583 U.S. 48, 56-57 (2018) (internal citations and quotation omitted)).

Defendants argue Plaintiff's claim for false arrest in violation of the Fourth Amendment fails as a matter of law because the undisputed facts establish that Banks, the "arresting officer," had probable cause to arrest him based on a fugitive warrant and extradition order. (Doc. 62 at 12-14). Specifically, Defendants contend Banks was directed to retrieve Plaintiff by the Statewide Extradition Officer and was informed Plaintiff had consented to extradition. While Plaintiff asserts that he signed the extradition paperwork with his actual name ("Charles Hayes"), Banks counters he was not "expected to decipher a subject's signature to confirm it matches the name printed at the top of the Waiver." *Id.* at 13. Defendants also assert that while Plaintiff's weight and height did not exactly match the data contained in the Robinson warrant, the differences are minor. *Id.* Defendants also argue Banks was not aware that there were any concerns with Plaintiff's identity as identified by LVMPD and that Plaintiff "[did] not allege that he protested his identity to Banks or Klawitter." *Id.* at 14.

In response, Plaintiff avers Banks failed to conduct a reasonable investigation into Plaintiff's identity. (Doc. 65 at 17-18). Plaintiff argues he repeatedly alerted the deputies he was not Robinson, but the deputies ignored him and failed to alert anyone that he had complained about his misidentification. *Id.* Plaintiff asserts there were significant differences between the arrestee and the

true suspect.  Plaintiff argues "[t]he warrant listed Robinson as 5' 11" and 180 pounds" while he "was a stark 5 inches shorter and 40 pounds lighter."  *Id.* at 18.  Next, Plaintiff claims the deputies failed to present him to a receiving officer as required by KCSO policy, thereby blocking him from being fingerprinted and properly identified.  *Id.*

The Court finds Plaintiff 's arguments fail to undermine Defendants' showing that Banks had a good faith, reasonable belief that the Plaintiff was the true warrant subject at the time of the arrest.  First, Banks was informed Plaintiff had consented to extradition and was not informed by any party within Nevada that there were any concerns or issues with Plaintiff's identity.  While Plaintiff may have complained to the deputies of his misidentification, "claims of innocence are common" and "[u]nsupported claims of mistaken identity by themselves, do not trigger a duty to investigate further." *Rivera*, 745 F.3d at 391-92; *Farber v. City of Los Angeles*, No. 2:22-cv-01173-ODW (KSx), 2023 WL 3628259, at *5 (C.D. Cal. May 24, 2023) ("Farber's protests of mistaken identity did not make the officer's belief unreasonable.").

Plaintiff and Robinson also shared similar characteristics: both men were black with black hair of similar length, brown eyes, and were similar ages. These characteristics support Defendants' contention Banks had a reasonable belief Plaintiff was the subject of the warrant.  *See Martinez v. Muentes*, 340 Fed. Appx. 700, 701-02 (2d Cir. 2009) (probable cause existed to arrest the plaintiff despite height, weight, and skin tone differences).

In the context of arrest warrants, the Ninth Circuit has recognized that height and weight discrepancies can affect probable cause to arrest.  *See Garcia v. County of Riverside*, 817 F.3d 635, 640-42 (9th Cir. 2016) (citing cases).  Generally, courts consider height differences of five inches or less to be insufficient to undermine probable cause.  *Willis v. City of Bakersfield*, No. 1:21-cv-01077-AWI-JLT, 2022 WL 2306907, at *6 (E.D. Cal. Jun. 7, 2022); *see Rodriguez v. Farrell*, 280 F.3d 1341, 1348 (11th Cir. 200) ("[A] mistaken estimate of no more than five inches does not equal a constitutional violation."); *White v. Olig*, 56 F.3d 817, 818-20 (7th Cir. 1995) (holding that a height difference of five inches and race confusion did not invalidate the arrest); *cf. Garcia*, 817 F.3d at 641 (explaining that further investigation was warranted because the arrestee was "nine inches taller and forty pounds heavier than the warrant subject"); *Gant v. Cnty of L.A.*, 772 F.3d 608, 618 (9th Cir. 2014) (further investigation

warranted because there was a 7-inch height difference between the arrestee and the subject of the warrant); *Cameron v. Brown*, 721 Fed. Appx. 612, 613 (9th Cir. 2017) (where plaintiff did not match the physical description of the female perpetrator provided by the witness and had a height and weight difference of six inches and 15 pounds, holding that a reasonable jury could find that a height difference of six inches for a woman is, at a minimum, a "red flag" that "should have led officers to question whether the person described" in the incident report was plaintiff).  Here, there was only a five-inch difference in height between Plaintiff, and what was listed on Robinson's warrant.  Because the height difference is slight and not "stark," the height difference did not undermine Bank's reasonable belief Plaintiff was the subject of the Robinson warrant.

As to the weight, it is true that Robinson's and Plaintiff's purported weights do not match. However, the Ninth Circuit has recognized that a weight difference of 10 pounds is not sufficient to undercut a reasonable belief as to identity (*see Rivera*, 745 F.3d at 389) and other courts have found that a weight difference of 20 to 25 pounds generally appear to be insignificant and do not undermine probable cause.  *See Martinez*, 340 Fed. Appx. at 701-02.  *Hill*, 349 F.3d at 1072 (a weight difference of 25 pounds was not enough to prompt the officer to investigate more fully); *Frasier v. McCallum*, No. 1:14-cv-00009-MP-GRJ, 2016 WL 3545793, at *6 (N.D. Fla. Mar. 21, 2016) (same); *cf. Gant*, 772 F.3d at 618 (further investigation warranted because of a 120 pound weight difference); *Fairley v. Luman*, 281 F.3d 913, 915 (9th Cir. 2002) (further investigation needed in light of a 66 pound weight difference between the arrestee and the subject of warrant).  Here, the undisputed facts show Plaintiff's weight was 160 pounds on his January 16, 2019, ID card and the amount listed on Robinson's warrant was 185 pounds.  This 25-pound weight difference is minor, "especially considering that it is a matter of common knowledge and experience that a person's weight will fluctuate over time and throughout life, either voluntary or involuntary".  *Neylon v. Cnty. of Inyo*, No. 1:16-CV-0712 AWI JLT, 2018 WL 3740535, at *8 (E.D. Cal. Aug. 3, 2018).

In sum, the differences between Plaintiff and Robinson are minor, and the Court is unaware of a case in which similar differences were sufficient to undercut a reasonable but mistaken belief in identity. Likewise, Plaintiff has not identified any such case. *See generally* (Doc. 65).  The similarities and shared characteristics between Plaintiff and Robinson are sufficient to support probable cause.

Plaintiff's claim Banks violated his Fourth Amendment rights because he was never fingerprinted by Kern County is without merit. The record demonstrates Plaintiff's fingerprints were taken. (DSMF at ¶ 54; Pl. Opp. DSMF ¶ 54); *see* (Docs. 66-1 at 68:2-17; 68-18 at Resp. No. 16). Next, Plaintiff claims that since he "had been in custody in California prior to this incident, his fingerprints would have returned a match to his true name." (Doc. 65 at 18). However, Robinson was arrested on July 23, 2019, several months after Plaintiff had been released from Kern County custody. (Doc. 76-1 at 8-9). Kern County jail staff did not have the benefit of comparing Robinson's FBI and CII numbers to Plaintiff booked under the name Robinson. *See* (Doc. 76-1 at 8-9) (Robinson was arrested by KCSO on July 13, 2019); *cf. Fairley*, 281 F.3d at 915 (neither a fingerprint comparison nor Department of Vehicles check was completed at any time during the detention coupled with significant differences in physical characteristics of the arrestee and the true suspect). *See also Hayes v. Las Vegas Metro. Police Dep't.*, No. 2:20-cv-02048-KJD-BNW, 2023 WL 2561607, at *6 (D. Nev. Feb. 23, 2023) (in light of the fingerprint comparison of Plaintiff not matching with Robinson, Hearrington conducted further investigation).

The Court finds no reasonable jury could find the arresting officers here were unreasonable in believing that Plaintiff was the subject of the warrant. Accordingly, summary judgment is warranted in favor of Defendant Banks and Klawitter on Plaintiff's Fourth Amendment claim.[9]

2. False Imprisonment—Fourteenth Amendment

"[P]ost-arrest incarceration is analyzed under the Fourteenth Amendment alone." *Rivera*, 745 F.3d at 389-90 (citing *Baker*, 443 U.S. at 145). Ninth Circuit "cases holding that a mistaken incarceration violated Due Process Clause fit into at least one of two categories." *Garcia*, 817 F.3d at 640. "Either '(1) the circumstances indicated to the defendants that further investigation was warranted, or (2) the defendants denied the plaintiff access to the courts for an extending period of time.'" *Id.* (quoting *Rivera*, 745 F.3d at 391).[10] It is the plaintiff's burden to show that it was or should have been

---

[9] Although Defendant Klawitter did not move for or join in the other Defendants' motion for summary judgment, Plaintiff does not advance any unique facts that would warrant an independent analysis as to Klawitter; thus, summary judgment is appropriate as to him for the same reasons as to Banks.

[10] This case does not involve a denial of access to the courts. There is no dispute that Plaintiff received a felony arraignment hearing on January 2, 2019, and a preliminary hearing on January 15,

known that the plaintiff was entitled to release.  *Rivera*, 745 F.3d at 390.  These "further investigation" cases generally "involve[] significant differences between the arrestee and the true suspect."  *Id.* at 391; *Garcia*, 817 F.3d at 641 (explaining that further investigation was warranted because the arrestee was "nine inches taller and forty pounds heavier than the warrant subject"); *Gant.*, 772 F.3d at 618 (further investigation warranted because there was a 7-inch height and a 120-pound weight difference between the arrestee and the subject of the warrant); *Soler v. Cnty of San Diego*, 762 Fed. Appx. 383, 386 (9th Cir. 2019) (holding that issues of fact remained regarding a constitutional violation where plaintiff and the subject of warrant had different eye color and the subject of warrant had visible scars).

Once further investigation is warranted, the investigation should involve "readily available and resource-efficient identity checks, such as a fingerprint comparison, to ensure that they are not detaining the wrong person."  *Garcia*, 817 F.3d at 642.  However, an individual officer may only be liable if there is a "casual connection" between the officer's acts and the constitutional violation.  *See Preschooler II v. Clark Cnty. Sch. Bd. Of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007).

Defendants move for summary judgment on Plaintiff's claims against Defendants Hirrel, Boyles, Wolter, Jefferies, and Rojas.  The Court shall address each in turn:

a. Brandy Hirrel

Defendants assert Plaintiff was arrested on a valid warrant and "[e]ven if Plaintiff protested his identity to Hirrel at booking, this is common and not enough to support a claim that Hirrel failed to investigate further."  (Doc. 62 at 20).  Plaintiff argues Hirrel had a duty to conduct a further reasonable investigation into his identity.  (Doc. 65 at 19).  Plaintiff asserts there were significant differences between him and Robinson and Hirrel failed to notify her supervisor of the misidentification, despite being expressly required to do so per KCSO's policies and procedures.  *Id.*

As discussed above, the Court concludes the differences in height and weight between Plaintiff and Robinson were not significant.  Even if Plaintiff complained to Hirrel of his mistaken identity the 5-inch height and 25-pound weight differences were too minor to warrant further investigation.  *Rivera*, 745 F.3d at 391-92; *see Hill*, 401 U.S. at 803 ("But aliases and false identifications are not

_____

2019.

uncommon."). This is particularly so because the physical makeup and other characteristics of Plaintiff were substantially similar to that of Robinson.

Plaintiff's argument that Hirrel was "expressly required" to notify her supervisor of Plaintiff's "misidentification" per KCSO's policies and procedures lacks any citation to factual support and is without merit. (Doc. 65 at 19). Defendants' Rule 30(b)(6) witness testified that the booking clerk will ask the arrested individual what their name is at the time they're being booked. (Doc. 67-13 at 11). If an arrestee informs the booking clerk that his true name is not what was presented, "[t]hey *can* either call a supervisor, or in most cases they will be booked on the information that is being presented to them by the arresting or transporting officer for booking purposes." *Id*. at 12 (emphasis added). Thus, Hirrel could notify a supervisor but was not "expressly required" to do so. Accordingly, even taking the facts in the light most favorable to Plaintiff, Plaintiff cannot establish a Fourteenth Amendment violation by Hirrel.

b. Rhonda Powell Boyles

Defendants assert the only involvement of Boyles was to act upon a valid warrant, a valid order of extradition, and a written waiver of extradition, by assigning deputies Banks and Klawitter to retrieve Plaintiff. (Doc. 62 at 22). Plaintiff contends Boyles, as the assigned extraditions coordinator, had a duty to obtain certified fingerprints, and photographs, and to further investigate pursuant to KCSO's K-100 policy. (Doc. 65 at 21). Plaintiff argues "Boyles knew the circumstances of this case necessitated further investigation into Plaintiff's identity; this is revealed by her fax to LVMPD requesting Plaintiff's extradition which states, 'ROBINSON, DEVON AKA: HAYES, CHARLES' as the subject line." *Id*. In response, Defendants assert the policy cited by Plaintiff (K-100) is not applicable to this case as it applies to "extradition requests from another state, the 'demanding' state, for a fugitive in Kern County." (Doc. 76 at 8-9).

The Court finds that as a matter of law, Boyles is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim. Plaintiff has not produced sufficient evidence demonstrating that Boyles caused his constitutional rights to be violated. Boyles was not informed by any party within Nevada that there were any concerns or issues with Plaintiff's identity that would warrant further investigation. Instead, Boyles received by fax a written waiver of extradition and she coordinated the extradition of

Plaintiff with CDCC and Deputies Banks and Klawitter.  Further, the Court finds K-100 is inapplicable to this case as it applies to extradition requests from another state for a fugitive.  (Doc. 76-1 at 11-12).  Thus, Boyles' involvement in Plaintiff's detention was unsubstantial and reasonable in all respects.  Even taking the facts in the light most favorable to Plaintiff, Plaintiff cannot establish a Fourteenth Amendment violation by Boyles.

      c. Jocelyn Wolter, and Connie Jefferies

      Defendants assert the sole involvement of Wolter and Jefferies in the underlying events was to receive information from Hearrington (LVMPD) regarding the extradition and relay emails to Rojas.  (Doc. 62 at 19).  Defendants argue this conduct is too attenuated to support a finding of a constitutional violation.  *Id.*  In contrast, Plaintiff claims Wolter and Jefferies had a duty to investigate and confirm Plaintiff's identity "upon being notified of the potential misidentification by LVMPD."  (Doc. 65 at 22).  Plaintiff argues Wolter and Jefferies knew that a photograph comparison would not confirm LVMPD had the correct fugitive because when the "real Devon Robinson" was extradited to Kern County Jail on the same fugitive warrant in July 2019, Wolter and Jefferies did retrieve fingerprints for comparison.  *Id.*  Plaintiff claims Wolter and Jefferies "failed to maintain the same level of diligence" for Plaintiff as they had for the "real Devon Robinson."  *Id.*

      The Court finds that as a matter of law, Wolter and Jefferies are entitled to summary judgment on Plaintiff's Fourteenth Amendment claim.  In November 2018, Wolter and Jefferies, as employees of Kern County Arrest Records, were asked by Hearrington to compare Plaintiff's LVMPD booking photo to any pictures on file for Robinson.  (DSMF at ¶ 26, PSMF at ¶ 32); *Hayes v. Las Vegas Metro. Police Dep't.*, No. 2:20-cv-02048-KJD-BNW, 2023 WL 2559453, at *6 (D. Nev. Feb. 23, 2023) ("Hearrington attempted to corroborate Plaintiff's claims of being misidentified by contacting Kern County for an affirmation that it was the correct suspect.").  Plaintiff offers no evidence or support for any suggestion that Hearrington informed either Wolter or Jeffries that Plaintiff claimed not to be Robinson.

      Plaintiff's related suggestion that the subject line of Hearrington's email to Wolter and Jeffries – "Robinson, Devon aka Hayes, Charles" – creates a disputed issue of material fact as to Wolter and Jeffries' duty to further investigate fails.  *E.g., Armijo v. Santa Fe Cnty.*, No. 17-cv-0574-WJ-SCY, 2018 WL 3118290, at *13 (D. N.M. June 25, 2018) ("Considering the facts in the most favorable light to

Plaintiff, and even assuming without deciding that Defendant Currey was negligent when he did not inquire of Plaintiff about his name or any use of aliases, this failure to 'further investigate' does not rise to a constitutional violation"); *Brown v. Officer Patterson*, No. 85-C-6859, 1986 WL 9757, at *3 (N.D. Ill. Sept. 4, 1986) (same).  At bottom, Wolter and Jefferies had no knowledge further investigation was warranted.

Plaintiff's claim Wolter and Jefferies should have known they needed to retrieve fingerprints for comparison in November 2018 because they did so in July 2019 is unpersuasive.  In July 2019, further investigation was merited as Robinson had already been misidentified as Plaintiff.  Wolter and Jefferies were certainly aware an identity issue could arise in July 2019, but the Court finds Wolter and Jefferies had no knowledge there was such an issue in November 2018.  Wolter and Jefferies' minimal involvement (forwarding emails) is simply not enough to show they participated in any failure to further investigate Plaintiff's identity.  Therefore, even taking the evidence in the light most favorable to Plaintiff, there is no disputed issue of material fact that neither Wolter nor Jeffries violated Plaintiff's rights under the Fourteenth Amendment.

d. Mario Rojas

Defendants contend Rojas was not presented with any information that would have imposed upon him a duty to further investigate Plaintiff's identity.  (Doc. 62 at 18-19).  Specifically, Defendants assert Rojas was asked only to compare the booking photo of Plaintiff with any pictures on file and was not informed by Hearrington that there was a misidentification issue.  *Id*.  Defendants note Rojas compared the booking photo of Plaintiff with Robinson's ID and asserts there were no significant differences that would demand further investigation.  *Id*. at 19.

In opposition, Plaintiff claims "Deputy Rojas knew that further investigation into LVMPD's inmate's identity was necessary given LVMPD specifically requested Kern County confirm their inmate's identity via email with a subject line: 'ROBINSON, DEVON: AKA HAYES, CHARLES.'" (Doc. 65 at 20).  Plaintiff argues it was Rojas' duty/responsibility to confirm Plaintiff was the subject of the warrant but failed to use any readily available identity checks such as a fingerprint comparison.  *Id*.  Plaintiff asserts a photo comparison was "obviously insufficient" to determine the identity of the subject and Rojas knew he had access to Robinson's fingerprint from his ID.  *Id*.  Additionally, Plaintiff argues

1 Rojas learned about a misidentification complaint from the district attorney on January 14, 2019, but

2 allowed Plaintiff "to sit in a cell as Devon Robinson for another day without using any readily available

3 identity checks." *Id*.

4       First, the Court finds further investigation and a fingerprint comparison by Deputy Rojas was not

5 warranted in November 2018. As discussed above, KCSO personnel were not informed there was an

6 identity issue with LVMPD's inmate and Rojas (like Wolter and Jeffries) was not told Plaintiff had

7 complained he was misidentified. Instead, Deputy Rojas compared Plaintiff's booking photo to

8 Robinson's ID and found both depicted Black males, of similar age, with brown eyes, black hair, and

9 similar shoulder length hair. Rojas was not presented with "significant differences" between Plaintiff

10 and the true suspect along with "repeated complaints of mistaken identity," for instance, that would

11 require an officer to conduct further investigation. *Rivera*, 745 F.3d at 391. As such, Rojas was not

12 required to conduct a fingerprint comparison. *See Garcia*, 817 F.3d at 642 ("However an obvious

13 physical discrepancy between a warrant subject and a booked individual, such as a nine-inch difference

14 in height, accompanied by a detainee's complaints of misidentification, should prompt officers to

15 engage in a readily available and resource-efficient identity checks, such as a fingerprint comparison, to

16 ensure that they are not detaining the wrong person.").

17       Next, the Court finds further investigation and a fingerprint comparison was warranted in

18 January 2019. However, the record demonstrates Rojas timely conducted a further investigation and a

19 fingerprint comparison. On the morning of January 14, 2019, the DA informed Rojas that Plaintiff

20 claimed he was not Robinson and requested Rojas ask the victim of Robinson's case to identify the

21 suspect. Following the victim's determination that Plaintiff was not Robinson at a preliminary hearing,

22 Rojas compared Plaintiff's booking fingerprints with Robinson's fingerprints from California's

23 Department of Motor Vehicles and confirmed Plaintiff had been misidentified. Thereafter, Plaintiff was

24 released that day. Even assuming *arguendo,* Rojas should have conducted a fingerprint comparison on

25 January 14, 2019, instead of after the preliminary hearing, the Court finds such a delay did not constitute

26 a due process violation. *Cf. Fairley*, 281 F.3d at 918 (plaintiff held for twelve days without hearing,

27 court appearance, or fingerprint comparison was a due process violation).

28

Moreover, after January 2, 2019, Plaintiff was held in custody pursuant to a court order. Although Plaintiff alleges his mother, Roberson, complained of misidentification to courthouse deputies and Plaintiff's public defender, the record does not demonstrate Plaintiff asserted a claim of mistaken identity at the January 2 court hearing.  Thus, Plaintiff "was no longer held simply on a warrant he was 'held in custody pursuant to a court order.'"  *Rivera*, 745 F.3d at 392 (citations omitted).  "If a suspect is held according to a court order, county officials are not required to investigate whether that court order is proper." *Id*. (citing *Hernandez v. Sheahan*, 455 F.3d 772, 776 (7th Cir. 2006)).  Accordingly, for the foregoing reasons, Plaintiff cannot establish a Fourteenth Amendment violation by Rojas.

In sum, no reasonable jury could find that further investigation by any of the Defendants was warranted.  Therefore, Defendants are entitled to judgment as a matter of law on Plaintiff's Fourteenth Amendment claim.

3. Qualified Immunity

Separately, Defendants assert they are entitled to qualified immunity.  "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  Qualified immunity balances two important interests, the need to hold public officials accountable when they exercise power irresponsibly, and the need to shield officials from harassment, distraction, and liability, when they perform their duties reasonably.  *Id*.  The doctrine is intended to "give[] government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011).

Determining whether an official is entitled to qualified immunity requires the Court to ask: "(1) whether the official's conduct violated a constitutional right; and (2) whether that right was 'clearly established' at the time of the violation."  *Hines v. Youseff*, 914 F.3d 1218, 1228-29 (9th Cir. 2019).  A plaintiff must prove both steps of the inquiry to establish the official is not entitled to qualified immunity.  *Felarca v. Birgeneau*, 891 F.3d 809, 815 (9th Cir. 2018) (citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  As discussed above, the Court finds no reasonable jury could find Plaintiff's Fourth

and Fourteenth Amendment rights were violated.  Accordingly, Defendants are entitled to qualified immunity.

4. *Monell* Liability

Plaintiff's second cause of action is a § 1983 claim under *Monell*, alleging Kern County and KCSO's practices, procedures, and rules caused Plaintiff's constitutional rights to be violated.  (Doc. 1 at 6-9).  Defendants argue that Plaintiff's constitutional rights were not violated so this claim should be dismissed.  (Doc. 62 at 20-21).  Defendants also argue Plaintiff failed to establish that Kern County "engaged in a frequent or consistent custom or practice of constitutional violations with regard to misidentification."  *Id*. at 21 (citing *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996)).

"A local government entity is liable under § 1983 when 'action pursuant to official municipal policy of some nature cause[s] a constitutional tort.'"  *Oviatt v. Pearce*, 954 F.2d 1470, 1473-74 (9th Cir. 1992) (quoting *Monell*, 436 U.S. at 691).  To establish a municipality's liability under *Monell*, a plaintiff "must show that (1) she was deprived of a constitutional right; (2) the [municipality] had a policy; (3) the policy amounted to a deliberate indifference to her constitutional right; and (4) the policy was the moving force behind the constitutional violation."  *Harmon v. City of Pocatello*, 854 Fed. Appx. 850, 854 (9th Cir. 2021).  As a logical corollary, where there is no underlying constitutional violation, there can be no *Monell* liability, regardless of the government entity's policies, customs, or failure to train.  *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionality excessive force is quite beside the point.").  *See also Miller v. City of Scottsdale*, -- F.4th --, 2023 WL 8505425, at *3 (9th Cir. Dec. 8, 2023) ("without showing an absence of probable cause [in support of plaintiff's false arrest claim], Miller cannot establish a constitutional violation necessary to prevail on his municipal liability claim under *Monell*.").

As discussed above, no reasonable jury could find any underlying constitutional violations were committed by Defendants.  Accordingly, Plaintiff's claim for municipal liability also fails.  Therefore, Defendants are entitled to summary judgment on Plaintiff's *Monell* second cause of action.

1    <u>B. Remaining State Law Claims</u>

2         Plaintiff also asserts two state law causes of action for negligence and intentional infliction of

3 emotional distress against Kern County and Doe Defendants.  (Doc. 1 at 9-11).  As the Court has

4 dismissed all claims over which it has original jurisdiction, the Court will exercise its discretion in

5 declining to adjudicate Plaintiff's related state law claims.  *See* 28 U.S.C. § 1367(c); *see United Mine*

6 *Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("if federal claims are dismissed before trial…the

7 state claims should be dismissed as well"); *Neylon*, 2018 WL 3740535, at *20 (same).

8         Here, the Court already has considered and dismissed Plaintiff's state law claims at Plaintiff's

9 request as they are barred by the applicable statute of limitations and for failure to comply with

10 California's Government Tort Claims Act.  (*Hayes II*, Doc. 23).  Therefore, the Court concludes that

11 judicial economy favors declining to exercise supplemental jurisdiction.  *Carnegie-Mellon Univ. v.*

12 *Cohill*, 484 U.S. 343, 350 n.7 (1988).

13 **<u>Conclusion</u>**

14         For the reasons set forth above, IT IS HEREBY ORDERED:

15         1.   Defendants' motion for summary judgment (Doc. 62) is GRANTED as to all remaining

16                defendants and claims in the case; and

17         2.   The Clerk of the Court is directed to close this case.

18 IT IS SO ORDERED.

19    Dated:   __**December 20, 2023**__                           

20                          UNITED STATES MAGISTRATE JUDGE

21

22

23

24

25

26

27

28